
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2017

JULIA C. DUDLEY, CLERK
BY:
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 7:07CR00061 |
| | (Civil Action No. 7:17CV81271) |
| v. | |
| | **MEMORANDUM OPINION** |
| LEWIS LEON PENDLETON II, | |
| | By: Hon. Glen E. Conrad |
| Defendant. | United States District Judge |

Defendant Lewis Leon Pendleton II, through counsel, has filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. He argues that following the decision in Johnson v. United States, 135 S. Ct. 2551 (2015), his sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), is unlawful because he no longer has the requisite number of convictions to support an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). After careful review of the record, and in light of recent precedent from the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit, the court will grant Pendleton's § 2255 motion and deny the government's motion to dismiss.

## I.

On September 6, 2007, a federal grand jury indicted Pendleton for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count One"), and for knowingly possessing a stolen firearm, in violation of 18 U.S.C. §§ 922(j) ("Count Two"). Pendleton pleaded guilty, pursuant to a written plea agreement, to Count One. Plea Agree. at 2, ECF No. 28. The plea agreement provided that Pendleton might be treated as an armed career criminal and that his federal sentence should be ordered to run concurrently with the sentence that he was already serving in Virginia state court. Id. at 4-5.

The Presentence Investigation Report ("PSR"), prepared in anticipation of sentencing, recommended that Pendleton be classified as an armed career criminal under the ACCA, 18 U.S.C. §§ 922(g) and 924(e). PSR ¶ 25, ECF No. 46. The PSR listed the following predicates to support the ACCA enhancement: a 1980 Virginia conviction for burglary; a 1981 Virginia conviction for three counts of burglary; a 1985 California conviction for second degree burglary; and a 1986 Virginia conviction for burglary. Id. ¶¶ 31, 32, 35, and 37. Because of the armed career criminal designation, the PSR recommended an increased guideline imprisonment range of 180 to 210 months. Id. ¶ 68.

The court adopted the PSR' recommendation, and sentenced Pendleton to a total of 180 months' incarceration, the statutory mandatory minimum, and ordered that the sentence run concurrently with Pendleton's Virginia state sentence. Judgment at 2, ECF No. 36. Pendleton did not appeal. Following his sentencing, Pendleton was returned to Virginia custody until he completed his Virginia sentence in July 2015. He was then transferred to federal custody to serve the remainder of his federal sentence.

On August 16, 2017, Pendleton filed a § 2255 motion. ECF No. 39. He argues that he is entitled to be resentenced because, following Johnson, his Virginia burglary convictions no longer support his enhanced sentence under the ACCA.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

2

U.S.C. § 2255(a). Pendleton bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Statute of Limitations

A petition under § 2255 must adhere to strict statute of limitations requirements before a court may address the merits of the arguments raised. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the Supreme Court recognizes a new right made retroactively applicable on collateral review. Id. at § 2255(f)(3).

Pendleton filed his § 2255 motion on August 16, 2017, more than one year from the date of his final judgment in 2008. In addition, he filed more than one year from the Supreme Court's decision in Johnson, 135 S. Ct. 2551, which issued on June 26, 2015. Pendleton argues that he has good reason for failing to file within the applicable deadlines and that the court should equitably toll the limitations period, an argument the government does not oppose. The court agrees.

Equitable tolling is appropriate in limited circumstances. It is available in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Although granted sparingly, application of the doctrine depends on the facts and circumstances of each case, and "does not lend itself to bright-line rules." Id. (internal quotation marks omitted). Pendleton's case presents the type of extraordinary circumstances that allows for equitable tolling.

At the time that the <u>Johnson</u> decision issued, Pendleton was in a state facility, serving his concurrent federal and state sentences. On August 3, 2015, this court entered a Standing Order appointing the Federal Public Defender for the Western District of Virginia ("FPD") to represent any defendant who may qualify for federal habeas relief in light of <u>Johnson</u>. Standing Order 2015-5 (W.D. Va. Aug. 3, 2015). The court obtained a list of defendants sentenced under the ACCA from the Federal Bureau of Prisons ("BOP"). Pendleton was omitted from the list because he was not in federal custody at that time. § 2255 Mot. Ex. 1, ECF No. 39-1. The BOP list was used by the FPD to determine which defendants might be entitled to relief. Neither the FPD nor the government realized that the BOP list might exclude defendants, like Pendleton, who were serving active ACCA sentences outside of a BOP facility. Pendleton explained that he learned of the <u>Johnson</u> decision only in the late spring or early summer of 2017, when he heard other inmates in the prison library discussing it. He then contacted the FPD, which filed the instant petition on Pendleton's behalf. Because of the court's Standing Order, the burden of identifying potential grounds for a § 2255 motion, normally the responsibility of the defendant, shifted to the FPD. Therefore, Pendleton has established an extraordinary series of events beyond his control that justified his late filing. As a result, the court will equitably toll the limitations period and reach the merits of Pendleton's claims. <u>Harris</u>, 209 F.3d at 330.

**B. Pendleton's ACCA Sentence**

1. <u>The ACCA Enhanced Sentence Structure</u>

Pendleton challenges the viability of the Virginia burglary predicate offenses used to support his status as an armed career criminal. Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted

4

of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that —
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court reviewed the second part of subsection (ii) of the violent felony definition. It concluded that the clause, known as the "residual clause," which provides, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 135 S. Ct. at 2563. The Supreme Court did not, however, strike down the other portions of the violent felony definition, which includes subsection (i), known as the "force clause," and the first part of subsection (ii), delineating specific crimes, known as the "enumerated crimes clause." Johnson, 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony"). Therefore, following Johnson, prior convictions that qualified as "violent felonies" under the residual clause can no longer serve as ACCA predicates. The Supreme Court's decision in Johnson announced a new

5

rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

## 2. Virginia Burglary is No Longer a Predicate Offense Under the ACCA

Pendleton is correct that his five convictions for Virginia statutory burglary, in violation of Virginia Code § 18.2-91,[1] no longer qualify as violent felonies. Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. Taylor v. United States, 495 U.S. 575, 589, 590 (1990). The Court went on to define generic burglary as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

The Virginia burglary statute defines the crime of burglary more broadly than the generic definition. Castendet-Lewis v. Sessions, 855 F.3d 253, 260-61 (4th Cir. 2017) (noting that because the Virginia burglary statute criminalizes entry into locations other than a building or

---

[1] Virginia Code § 18.2-91 provides:

> If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be guilty of statutory burglary."

Va. Code Ann. § 18.2-91 (2015). Virginia Code § 18.2-90, in turn, provides the elements of statutory burglary and currently reads:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any building permanently affixed to realty, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, or robbery, he shall be deemed guilty of statutory burglary . . . .

Va. Code Ann. § 18.2-90 (2015). Section 18.2-90 has been amended over the years and Pendleton was convicted under slightly differing versions as his Virginia statutory burglary convictions span from 1980 to 1986. However, the amendments were not substantive and do not alter the analysis of the opinion.

6

structure, it is broader than generic burglary). In addition, the Fourth Circuit has concluded that the Virginia burglary statute, § 18.2-90, is indivisible because it enumerates different factual means of committing the statutory offense of burglary, but does not describe separate crimes. Id. at 262. Because the Virginia statutory burglary statute is both broader than generic burglary and indivisible, it does not qualify as a generic burglary under the enumerated crimes clause of the ACCA and cannot be used to support an ACCA enhanced sentence. United States v. Major, 693 F. App'x 267, 268 (4th Cir. 2017) (unpublished) (concluding that a defendant's status as an armed career criminal could not stand because it was based on prior convictions for Virginia burglary).

3. Pendleton's Resentencing

Pendleton's ACCA sentence was premised on his prior convictions for Virginia burglary, which no longer support his armed career criminal status. Accordingly, his sentence of 180 months is unlawful, as it exceeds the statutory maximum of 120 months for an 18 U.S.C. § 922(g) conviction without the ACCA enhancement. Pendleton has served approximately 118 months of his federal sentence. The court determines, and the parties agree, that a sentence of time served is appropriate in this case.

### III.

Pendleton no longer qualifies as an armed career criminal and is entitled to resentencing. Therefore the court will grant Pendleton's motion to vacate and deny the government's motion to dismiss. An appropriate order will be entered this day.

ENTER: This 13th day of October, 2017.

United States District Judge